STATE OF NORTH CAROLINA v. LEONARD EARL MORROW

No. 7629SC544

(Filed 15 December 1976)

1. **Bill of Discovery § 6— discovery in criminal cases — failure to furnish statement until day before trial**

   In this prosecution of defendant for the murder of his wife wherein the district attorney agreed to comply with defendant's written request for discovery of any oral statements made by defendant which the State intended to offer at trial, failure of the district attorney

to furnish to defense counsel until the day before trial statements made by defendant when he first went to the sheriff's office to report that his wife was missing did not constitute a violation of G.S. Ch. 15A, Article 48, and the statements were properly admitted in evidence, where the district attorney promptly notified defendant's attorneys of the statements as soon as he decided to use them at trial in compliance with G.S. 15A-907, the district attorney in the notification granted permission to defendant's attorneys to interview the witnesses who would testify as to the statements, and the notification given allowed defendant's attorneys ample time to investigate the matter in view of the brevity and simplicity of the testimony concerning the statements.

### 2. Homicide § 21— second degree murder — sufficiency of evidence

The State's evidence was sufficient for the jury in a prosecution of defendant for second degree murder of his wife where it tended to show: defendant did not report that his wife was missing until after her daughter insisted he do so, and even then he expressed a lack of concern as to her whereabouts; to explain his delay in reporting and his lack of concern defendant showed officers a note written by his wife six weeks earlier which he professed to have found only on the morning after she disappeared; defendant's car was similar to one seen late at night parked beside a mountain road where a man was seen holding a "slumped-over" woman dressed in a gown; his wife's body was found covered by a gown approximately 15 feet from where the car was parked; her death was caused by strangulation; and defendant claimed to have been home asleep from 10:45 on the night the car was seen on the mountain, but a neighbor saw defendant return home alone in his car at about 1:15 the same night.

### 3. Criminal Law § 15— improper venue — motion to dismiss not timely — conclusiveness of venue allegation

Defendant was not entitled to dismissal of a murder charge on the ground the indictment charged that the killing occurred in Rutherford County but proof indicated it occurred in McDowell County since (1) the evidence would equally support a jury finding that the killing occurred in Rutherford County and (2) defendant's motion to dismiss made at the close of the evidence was not timely and the allegation of venue became conclusive by virtue of G.S. 15A-135.

APPEAL by defendant from *Baley, Judge.* Judgment entered 11 March 1976 in Superior Court, RUTHERFORD County. Heard in the Court of Appeals 10 November 1976.

Defendant was indicted for the first degree murder of his wife, Martha Newton Morrow. The State elected to try him for second degree murder or for manslaughter as the evidence would warrant. Defendant pled not guilty.

Evidence presented by the State showed the following:

On 15 September 1975 the body of defendant's wife, Martha Newton Morrow, was found lying in the weeds at the top of a cliff about 15 feet off of N.C. Highway 80 in McDowell County. An autopsy revealed she died from strangulation. On the same day the daughter of the deceased went to visit her mother at the mobile home occupied by defendant and his wife in Rutherford County. Defendant told her he did not know where her mother was, that he had last seen her when he went to bed about 10:45 p.m. on 11 September 1975, that she was gone when he awoke the next morning, and that she left him a note which he found at the side of the bed. The daughter recognized the note as one she had seen her mother write about six weeks previously when her mother had left defendant to go stay with her daughter. At the daughter's insistence, defendant reported to the officers on 15 September 1975 that his wife had been missing since the night of 11 September 1975.

Three witnesses testified that while on their way home from work between 11:45 p.m. and midnight on 11 September 1975, they saw a yellow Mercury GT Comet automobile with black stripes parked along the side of N. C. Highway 80 at a point near where the deceased's body was subsequently found. A man was standing next to the car holding a woman under the arms. The woman was "kind of slumped over." A neighbor, who lived directly across the street from the defendant's mobile home, testified that when she went outside of her house about 12:30 a.m. on 12 September 1975, she noticed defendant's Comet automobile was gone. About 45 minutes later, she saw defendant return alone in his automobile and go inside his mobile home. A deputy sheriff testified that traveling 5 miles over the speed limit it took 52 minutes to drive from the mobile home occupied by defendant in Rutherford County to the point on N. C. Highway 80 in McDowell County where the body was found.

Defendant was arrested on 16 September 1975. His yellow GT Comet with black stripes was taken to the parking lot beside the Rutherford County jail. Later that day, the three witnesses who had seen an automobile parked along the side of N. C. Highway 80 on the night of 11 September 1975 came to the jail and identified defendant's Comet as "one just like the one (they) saw on the mountain."

Defendant did not present evidence. The jury found him guilty of second degree murder. From judgment imposing a prison sentence, defendant appealed.

*Attorney General Edmisten by Associate Attorney Nonnie F. Midgette for the State.*

*Hollis M. Owens, Jr., and J. H. Burwell, Jr., for defendant appellant.*

PARKER, Judge.

[1] Defendant first assigns error to the court's overruling his objections to testimony by deputy sheriff L. W. Nichols as to statements made by the defendant prior to his arrest concerning the disappearance of his wife. On 6 October 1976, being in apt time pursuant to G.S. 15A-902, defendant's court appointed counsel served a written discovery request on the district attorney, asking, among other things, that he divulge and furnish the substance of any oral statement made by the defendant which the State intended to offer in evidence at the trial. On 11 October 1975 the district attorney responded in writing and agreed to submit the evidence requested. On 8 March 1976, the day before defendant's trial, the district attorney notified defense counsel in writing that defendant had made certain statements, that on the first request for discovery the State had not anticipated using these since all were self-serving, but that upon reflection the State intended to offer these statements to show that they were inconsistent. At the trial, defendant's counsel objected when the district attorney, on direct examination of deputy sheriff Nichols, asked about the statements made by defendant when he first came to the sheriff's office to report that his wife was missing. Before ruling on the objection, the court conducted a voir dire examination. At the conclusion of this examination, the court ruled the evidence admissible. In this ruling, we find no error.

At the outset we observe that the record fully supports, and defendant does not challenge, the court's determination made at the conclusion of the voir dire hearing that the defendant's statements were voluntarily made at the instance of the defendant himself when he was not in custody or under arrest. Defendant challenges the court's ruling solely on the ground that the district attorney failed to comply with the provisions of G.S. Chap. 15A, Article 48, entitled "Discovery in the Superior

Court." We do not agree with the defendant's contention. G.S. 15A-907 provides:

> "If a party, subject to compliance with an order issued pursuant to this Article, discovers prior to or during trial additional evidence *or decides to use additional evidence,* and the evidence is or may be subject to discovery or inspection under this Article, he must promptly notify the attorney for the other party of the existence of the additional evidence." (Emphasis added.)

Here, the district attorney did promptly notify the attorneys for the defendant as soon as he decided to use the evidence concerning defendant's statements. No suggestion of bad faith on the part of the State appears in the record in this case. The district attorney, in the same written notification, granted permission to the attorneys for the defendant to interview the State witnesses who would testify concerning the statements made by the defendant. This was done on the day before defendant's trial commenced. In view of the brevity and simplicity of the testimony concerning defendant's statements, the notification given allowed defendant's attorneys ample time to investigate the matter. They did not move for a continuance or otherwise indicate that they needed additional time. Even if there had been a failure to comply with G.S., Ch. 15A, Article 48, and we find none, the trial court, although empowered to do so by G.S. 15A-910(a) (3), was not required to prohibit the introduction of the evidence. Which of the several remedies available under that statute should be applied in a particular case is a matter within the trial court's sound discretion, not reviewable on appeal in the absence of a showing of an abuse of discretion. *See State v. Carter,* 289 N.C. 35, 220 S.E. 2d 313 (1975). No abuse of discretion has been here shown. Defendant's first assignment of error is overruled.

[2]  Defendant next assigns error to the denial of his motions for nonsuit. We find no error in this regard. The State's evidence showed that defendant did not report that his wife was missing until after her daughter insisted he do so, that even then he expressed a total lack of concern as to her whereabouts, that to explain his delay in reporting and his lack of concern he showed the officers a note written by his wife six weeks earlier which he professed to have found only on the morning after she disappeared, that defendant's automobile was similar to the car

seen late at night parked beside the mountain road where a man was seen holding up a "slumped-over" woman dressed in a gown, that his wife's body was found covered by á gown at a point approximately 15 feet from where the car was parked, that her death was caused by strangulation, that defendant claimed to have been at home asleep from 10:45 p.m. on the night the car was seen on the mountain, and that a neighbor saw defendant return home alone in his car at approximately 1:15 a.m. that same night. Viewing this evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference to be drawn therefrom, we find it sufficient to support a jury finding that defendant strangled his wife and left her body on the side of the mountain. We find the evidence amply sufficient to take the case to the jury. Defendant's motions for dismissal as of nonsuit were properly denied.

[3]　We also find no merit in defendant's contention that he was entitled to dismissal because the indictment charged that the killing occurred in Rutherford County but the proof indicated it occurred in McDowell County. The evidence would equally support a jury finding that the killing occurred in Rutherford County. Moreover, the question of venue was not properly raised by defendant's motion to dismiss made at the close of the evidence. G.S. 15A-135, which became effective 1 September 1975, provides:

> "G.S. 15A-135. *Allegation of venue conclusive in absence of timely motion.* Allegations of venue in any criminal pleading become conclusive in the absence of a timely motion to dismiss for improper venue under G.S. 15A-952. . . . "

Under G.S. 15A-952 a motion to dismiss for improper venue must be made at or before the time of arraignment if arraignment is held prior to the session of court for which the trial is calendared. If arraignment is held at the session for which trial is calendared, the motion must be filed on or before five o'clock p.m. on the Wednesday prior to the session when trial of the case begins. No such timely motion was made in the present case, and the allegations of venue in the indictment became conclusive by virtue of G.S. 15A-135. The same result would have occurred under prior statutes in the absence of a timely plea in abatement. *State v. Dozier,* 277 N.C. 615, 178 S.E. 2d 412 (1971); *State v. Outerbridge,* 82 N.C. 617 (1880); *State v. Puryear,* 30 N.C. App. 719, 228 S.E. 2d 536 (1976).

In his final assignment of error the defendant contends the court erred in failing to instruct the jury that in order to find the defendant guilty they must find the killing occurred in Rutherford County. No such instruction was required. As above noted, the allegation of venue contained in the indictment became conclusive.

In defendant's trial and in the judgment appealed from we find

No error.

Chief Judge BROCK and Judge HEDRICK concur.